UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JON S. RAHOI, YANLING L. RAHOI, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., PROFESSIONAL RECOVERY SERVICES, INC., a New Jersey Corporation, <br><br> Defendants. | Case No.: 12-CV-03756-LHK <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |

Before the Court are the Motions to Dismiss of Defendant JPMorgan Chase Bank, N.A. ("Chase"), *see* ECF No. 11 ("Chase Mot."), and Defendant Professional Recovery Services, Inc. ("PRS"), *see* ECF No. 17 ("PRS Mot."), (collectively, "Motions"). Having considered the parties' submissions, the relevant case law, and the parties' arguments at the March 21, 2013 hearing, the Court DENIES Defendants' Motions to Dismiss Plaintiffs' cause of action for a violation of the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA"), predicated on a violation of 15 U.S.C. § 1692e(2)(A) of the federal Fair Debt Collection Practices Act ("FDCPA"). The Court GRANTS with prejudice Defendants' Motions to Dismiss Plaintiffs' RFDCPA claim predicated on a violation of 15 U.S.C. § 1692f(1) of the FDCPA and Plaintiffs' injunctive relief requests.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

I.      **FACTUAL BACKGROUND**

In April, 2007, Plaintiffs Jon and Yangling Rahoi ("Plaintiffs") purchased, and then subsequently occupied a portion of, a residential duplex, located at 1400 and 1402 Kansas Street, in the City of San Francisco, State of California ("the Property").  Plaintiffs financed the purchase of the Property with two loans from Chase.  ECF No. 1 ("Complaint" or "Compl.") ¶ 11.  The first loan was in the amount of $900,000.00 ("First Note") and was secured by a deed of trust ("First Deed of Trust").  *Id.*  The second loan was in the amount of $240,000.00 ("Second Note") and was secured by a deed of trust ("Second Deed of Trust").  *Id.*  Both the First and Second Deeds of Trust (collectively, "the Mortgages") encumbered the Property.  *Id.*

Plaintiffs fell behind in their payment obligations on the Mortgages.  *Id.*  ¶ 12.  In 2010, Plaintiffs began attempting to sell the Property through a short sale.  *Id.*

In a letter dated February 17, 2011, Chase agreed to release its security interest in the Second Note in exchange for $8,500 so that the short sale could be permitted to close.  *Id.* ¶ 13; Chase Mot., Ex. A at 2 of 9 ("February Letter").[1]  The February Letter stated that the $8,500 "is for the release of Chase's security interest only, and you are still responsible for the deficiency balance remaining on the Loan, per the terms of the original loan documents."  *Id.*

The Complaint alleges that the short sale price was insufficient to fully satisfy the First Note and that no funds from the short sale were used to satisfy the Second Note.  *See* Compl. ¶ 13.  However, at the March 21, 2013 hearing, both parties' counsel, while not certain, believed that the short sale had fully satisfied the First Note and that there was an $80,000 surplus which was applied to the Second Note.  *See* Tr. at 8:3-9, 8:20-9:11.  According to counsel for Chase, there was an expectation that if the funds from the short sale were sufficient to satisfy the First Note, the funds would be applied towards the Second Note.  *See id.* at 8:11-19.

Following the short sale of the Property, Chase retained the services of PRS to attempt to collect the unpaid balance on the Second Note.  *Id.* ¶ 14.  PRS sent multiple collection letters to Plaintiffs.  *Id.*  After several months of collection efforts by PRS, Chase engaged, and continues to

---

[1] At the March 21, 2013 hearing, Plaintiffs agreed that Chase's Exhibit A could be considered in resolving the Motions to Dismiss.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    engage, in its own attempts to collect on the unpaid balance of the Second Note, including multiple

2    letters and multiple phone calls.  *Id.* ¶15.

3    **II.    PROCEDURAL BACKGROUND**

4        Plaintiffs filed their Complaint on July 18, 2012.  Plaintiffs allege a single cause of action.

5    Specifically, Plaintiffs allege that, in attempting to collect the balance due on the Second Note,

6    Defendants have violated the California Rosenthal Fair Debt Collection Practices Act

7    ("RFDCPA").  Compl. at 5-6 (citing Cal. Civ. Code § 1788 *et seq.*).  Both Defendants' Motions to

8    Dismiss are fully briefed.  A hearing on both Motions to Dismiss was held on March 21, 2013.

9    **III.   LEGAL STANDARD**

10       **A.    Rule 12(b)(6)**

11       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

12   12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

13   2001).  In considering whether the complaint is sufficient to state a claim, the court must accept as

14   true all of the factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15   (2009).  However, the court need not accept as true "allegations that contradict matters properly

16   subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted

17   deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055

18   (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must contain

19   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

20   *Iqbal*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

21   claim is facially plausible when it "allows the court to draw the reasonable inference that the

22   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

23       **B.    Leave to Amend**

24       Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

25   given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

26   decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith,* 203 F.3d

27   1122, 1127 (9th Cir. 2000) (en banc) (internal citations, quotation marks, and alterations omitted).

28   Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad

*United States District Court*
For the Northern District of California

3

faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892–93 (9th Cir.2010) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)) (alterations in original).  "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'"  *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir.2009) (quoting *In re Read–Rite Corp.,* 335 F.3d 843, 845 (9th Cir. 2003)).  Indeed, repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend.  *Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733, 742 (9th Cir. 2008) (citing *Foman,* 371 U.S. at 182; *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990)).

**IV.     DISCUSSION**

Plaintiffs contend that California Code of Civil Procedure Section 580b, which prohibits deficiency judgments in certain circumstances, precludes JPMorgan from seeking to recover under the Second Note.  *See* Compl. ¶¶ 7, 24.  Plaintiffs allege that, in light of Section 580b, Defendants' efforts to collect the unpaid amount of the Second Note violated the RFDCPA.  *See Id.* ¶¶ 20-24. Plaintiffs seek, individually and on behalf of the class: (1) damages totaling the lesser of one percent of each of the Defendants' net worth or $500,000.00, and (2) injunctive relief.  *Id.* ¶¶ 25, 27.[2]

Defendants argue that Plaintiffs' allegations fail to state a claim for relief for several reasons and that, accordingly, Plaintiffs Complaint must be dismissed.  Before addressing Defendants' arguments, the Court finds it prudent to discuss: (1) the definition of several key terms; (2) the background of Section 580b; and (3) the specific ways in which Plaintiffs claim that Defendants violated the RFDCPA.

**1.     Key Terms**

At the outset, the Court defines several key terms: (1) purchase money mortgage/purchase money loan; (2) foreclosure sale; (3) short sale; and (4) deficiency judgment.

---

[2] Plaintiffs additionally contend that "Plaintiffs are entitled to additional damages, up to $1,000 each."  Compl. ¶ 25.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    *Purchase Money Mortgage/Purchase Money Loan.*  A mortgage is "[a] conveyance of title

2    to property that is given as security for the payment of a debt…."  MORTGAGE, Black's Law

3    Dictionary (9th ed. 2009).  A "purchase-money mortgage" is a type of mortgage transaction in

4    which "a buyer [of property] gives the seller [a mortgage]… to secure the unpaid balance of the

5    price" of the purchased property.  *Id*.  While the traditional purchase money transaction

6    contemplates a transaction in which the seller of property provides the buyer with a loan secured by

7    the purchased property, the term purchase money has also been applied to describe transactions

8    wherein the buyer of real property receives a loan from a third-party lender (*i.e.* a lender other than

9    the seller of the property) and provides the lender with a mortgage on the purchased property.  *See*

10   Section 580b (providing that a "mortgage on a dwelling for not more than four families given to a

11   lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price

12   of that dwelling" shall be considered a "purchase money loan" for the purposes of that section).

13   The key feature of a purchase money loan is that the property securing the loan is the same

14   property that the loan funds were used to purchase.  *See Roseleaf Corp. v. Chierighino*, 59 Cal. 2d

15   35, 41 (1963) (describing the "standard purchase money mortgage transaction" as one "in which

16   the vendor of real property retains an interest in the land sold to secure payment of part of the

17   purchase price"); *Palm v. Schilling*, 199 Cal. App. 3d 63, 76 (1988) (holding that a "deed retains its

18   purchase money character so long as the creditor retains an interest in the original property sold").

19   *Foreclosure Sale.*  A "foreclosure" is "[t]he sale of mortgaged property, authorized by a

20   court decree or a power-of-sale clause, to satisfy the debt."  SALE, Black's Law Dictionary (9th ed.

21   2009).  Foreclosures may be "judicial" or "non-judicial."  A sale pursuant to a court decree is

22   called a "judicial foreclosure."  FORECLOSURE, Black's Law Dictionary (9th ed. 2009).

23   Accomplishing a judicial foreclosure may be costly and time-consuming for the lender, and

24   requires the lender to comply with stringent procedural requirements such as filing a complaint,

25   serving process, providing notice, and a hearing.  *Id.*  A sale pursuant to a "power-of-sale clause"

26   is a "nonjudicial" or "power-of-sale foreclosure."  A "power-of-sale clause" is a "provision in a

27   mortgage or deed of trust permitting the mortgagee or trustee to sell the property without court

28   authority if the payments are not made."  POWER-OF-SALE CLAUSE, Black's Law Dictionary

5

**United States District Court**
For the Northern District of California

1    (9th ed. 2009).  A lender may prefer a nonjudicial foreclosure because this procedure does not

2    require the lender to comply with the stringent notice requirements and procedural burdens

3    associated with a judicial foreclosure.

4         *Short-Sale*.  A short-sale is a procedure pursuant to which the mortgagor (borrower) and the

5    mortgagee (lender) agree that the mortgagee will release its interest in the mortgaged property if

6    the mortgagor sells the property to a third-party for a certain price which is "below the mortgage

7    loan balance."  2 Law of Real Estate Financing § 12:10.

8         As explained by the Court in *Rex v. Chase Home Finance LLC*:

9         A "short sale" has advantages to both borrowers and lenders and is but one
          "alternative" that borrowers have "when a home is facing foreclosure." 1 L.
10        Distressed Real Est. § 3B:8, Workout options in general—Short sales to avoid
          foreclosure. "The benefit to the borrower of a short sale agreement is that the
11        borrower can avoid having a foreclosure on his credit record, avoid the time,
          frustration, and uncertainty of a foreclosure action, and, if deficiencies are waived
12        by the lender, start fresh without any continuing obligation under the note and
          mortgage." *Id.* "The advantage to the lender is the savings in time and avoiding
13        the expense of carrying and marketing the property after a foreclosure sale if no
          third-party purchaser materializes at the foreclosure sale." *Id.*

14

15   *Id.*, 905 F. Supp. 2d 1111, 1139 (C.D. Cal. 2012)

16        *Deficiency and Deficiency Judgment*.   Black's Law Dictionary defines a "deficiency" as

17   "[t]he amount still owed when the property secured by a mortgage is sold at a foreclosure sale for

18   less than the outstanding debt."  DEFICIENCY, Black's Law Dictionary (9th ed. 2009).  A

19   "deficiency judgment" is "[a] judgment against a debtor for the unpaid balance of the debt if a

20   foreclosure sale or a sale of repossessed personal property fails to yield the full amount of the debt

21   due."  JUDGMENT, Black's Law Dictionary (9th ed. 2009).  In California, the procedures

22   governing deficiency judgments are set forth primarily in California Civil Procedure Code Sections

23   580a and 726.  *See, e.g.,* Cal. Civ. Proc. Code § 726 (setting forth the procedures for obtaining

24   deficiencies judgments); Cal. Civ. Proc. Code § 580a (setting forth procedures governing

25   deficiency judgments following a nonjudicial foreclosure).

26              **2.    Section 580b**

27        California Code of Civil Procedure Section 580b was originally enacted in 1933.  *See*

28   *Brown v. Jensen*, 41 Cal. 2d 193, 199 (1953).  The statute provides anti-deficiency protection for

6

purchase money mortgagors.  As in effect at the time of the transactions in this case, Section 580b

provided:

> § 580b. Purchase money mortgages, etc.; no deficiency judgment.  No deficiency
> judgment shall lie in any event after a sale of real property or an estate for years
> therein for failure of the purchaser to complete his or her contract of sale, or under a
> deed of trust or mortgage given to the vendor to secure payment of the balance of the
> purchase price of that real property or estate for years therein, or under a deed of trust
> or mortgage on a dwelling for not more than four families given to a lender to secure
> repayment of a loan which was in fact used to pay all or part of the purchase price of
> that dwelling occupied, entirely or in part, by the purchaser.

Cal. Civ. Proc. Code § 580b (West 2012).[3]

As explained by the California Supreme Court in *DeBerard Properties, Ltd. v. Lim*, Section

580b serves two purposes.  *See id.*, 20 Cal. 4th 659, 663 (1999).

"First, section 580b… stabilizes purchase money secured land sales by keeping the vendor

from overvaluing the property and by suggesting to the purchaser its true value."  *Id.*  "Section

580b places the risk of inadequate security on the purchase money mortgagee.  A vendor is thus

discouraged from overvaluing the security."  *Id.* at 663-64 (quoting *Roseleaf*, 59 Cal.2d at 42).

"Second, [Section 580b] is a macroeconomic stabilization measure: if property values drop

and the land is foreclosed upon, the purchaser's loss is limited to the land that he or she used as

security in the transaction, purchasers as a class are harmed less than they might otherwise be

during a time of economic decline, and the economy benefits."  *Id.*; *see also id.* at 664 ("If

inadequacy of the security results, not from overvaluing, but from a decline in property values

during a general or local depression, section 580b prevents the aggravation of the downturn that

would result if defaulting purchasers were burdened with large personal liability.  Section 580b

thus serves as a stabilizing factor in land sales.") (quoting *Roseleaf*, 59 Cal.2d at 42).

Section 580b has traditionally been applied to prohibit a lender from seeking to hold a

borrower personally liable for the unpaid amount of a purchase money mortgage following a

nonjudicial or judicial foreclosure.  *See, e.g., Kurtz v. Calvo*, 75 Cal. App. 4th 191, 194 (1999)

("Section 580b prohibits a deficiency judgment after a judicial or nonjudicial foreclosure under a

---

[3] Section 580b was amended effective January 31, 2013.  The amendments are not relevant in
resolving the issues currently before the Court.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   trust deed securing a purchase money loan."); *Birman v. Loeb*, 64 Cal. App. 4th 502, 510 (1998)

2   ("Section 580b precludes a 'deficiency judgment' after foreclosure, judicial or nonjudicial, under a

3   purchase money trust deed given to the seller.").  However, as will be discussed below, Plaintiffs

4   contend that Section 580b applies following a short sale as well.

### 3.      Plaintiffs' RFDCPA Claim

6        Plaintiffs allege a single cause of action for violation of the RFDCPA.  *See* Compl. ¶¶ 20-

7   24.  However, Plaintiffs' RFDCPA claim is predicated on two separate provisions of the federal

8   Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), which is incorporated

9   into the RFDCPA by reference.  *See* Cal. Civ. Code § 1788.17 (providing that "every debt collector

10  collecting or attempting to collect a consumer debt shall comply with the provisions of Sections

11  1692b to 1692j… of, Title 15 of the United States Code").

12       First, Plaintiffs contend that Defendants violated Section 1692e(2)(A) of the FDCPA,

13  which prohibits "[t]he false representation of… the character, amount, or legal status of any debt."

14  15 U.S.C. § 1692e.  Plaintiffs allege that, in light of Section 580b, Chase was precluded from

15  collecting Plaintiffs' remaining debt on the Second Note following the short sale.  *See* Compl. ¶¶ 7,

16  20-24.[4]  Accordingly, Plaintiffs allege that Defendants misrepresented the truth in violation of

17  Section 1692e[5] when they "communicated to the Plaintiffs… (i) [t]hat the amount of the debt was

18  $166,045.78 when, in truth, there was no debt owed; (ii) [t]hat the character of the money owed

19  was a debt when, in truth, there was no debt owed; and (iii) [t]hat the legal status of the

---

[4] Notably, Plaintiffs fail to specifically allege that Section 580b precluded Chase from collecting the outstanding debt on the Second Note.  However, the Court infers that this is what Plaintiffs are alleging based on Plaintiffs': (1) invocations of Section 580b in Paragraphs 7 and 24, (2) allegations that Defendants attempted to collect on the Second Note even though "there was no debt owed," *see* Compl. ¶ 23, and (3) arguments in Plaintiffs' Oppositions at the March 21, 2013 hearing.  Based on Defendants' Motions and arguments at the March 21, 2013 hearing, the Complaint appears to have been sufficient to put Defendants on notice of the nature of Plaintiffs' claim.  Accordingly, the Court declines to dismiss on this ground.  Nevertheless, the Court cautions Plaintiffs that Plaintiffs will not be permitted to argue, at a later stage, that Defendants' attempts to collect the outstanding debt on the Second Note were prohibited for some reason other than the operation of Section 580b because the Complaint fails to clearly allege a basis beyond Section 580b.

[5] Plaintiffs reference "15 U.S.C. [§] 1962(e)(2)(A)."  Compl. ¶ 23 (emphasis added).  However, it appears that Plaintiffs meant to reference 15 U.S.C. § 1692e(2)(A).

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    $166,045.78 was an amount that was owed to Chase when, in truth, Plaintiffs were under

2    absolutely no legal obligation to pay any portion of that sum to Chase or PRS...”  Compl. ¶ 23.

3          Second, Plaintiffs contend that Defendants violated Section 1692f(1)[6] of the FDCPA, which

4    prohibits “[t]he collection of any amount… unless such amount is expressly authorized by the

5    agreement creating the debt or permitted by law.”  15 U.S.C. § 1692f(1).  Plaintiffs allege that

6    Defendants violated Section 1692f(1) by “engag[ing] in... acts of debt collection to obtain payment

7    of $166,045.78, which sum… was not [legally] authorized” because of the operation of Section

8    580b.  Compl. ¶ 24.  Because Plaintiffs’ RFDCPA claim is predicated on two separate provisions

9    of the FDCPA, for the convenience of the reader and the parties, for the purposes of this Order, the

10   Court will treat Plaintiffs’ RFDCPA allegations as alleging two separate causes of action, one

11   predicated on Section 1692e(2)(A) and one predicated on Section 1692f(1).

12         Having discussed the definitions of the key terms, the background of Section 580b, and

13   Plaintiffs’ arguments, the Court proceeds to address Defendants’ arguments as to why Plaintiffs’

14   RFDCPA claim must be dismissed.

15         **B.    Defendants’ Arguments**

16         Defendants argue that Plaintiffs’ RFDCPA claim must be dismissed for six reasons:

17         First, Defendants argue that Section 580b does not preclude enforcement of the Second

18   Note because Plaintiffs’ home was sold through a short sale and Section 580b only precludes

19   deficiency judgments where there has been a foreclosure.  *See* Chase Mot. at 1; PRS Mot. at 1.

20         Second, Chase argues that, even if Section 580b does apply, Plaintiffs waived Section

21   580b’s protections when they agreed with Chase in the February Letter that Chase would release its

22   Second Deed of Trust on the Property.  *See* Chase Mot. at 1.

23         Third, PRS argues that Plaintiffs’ claim should be dismissed because the RFDCPA does not

24   cover the collection of a mortgage loan.  *See* PRS Mot. at 1.

25         Fourth, PRS argues that Plaintiffs’ claims fail because, even if Section 580b applies,

26   Section 580b did not extinguish Plaintiffs’ debt.  *See* PRS Mot. at 5.  Accordingly, PRS argues that

27

28   ─────────────────────
     [6] Plaintiffs reference “15 U.S.C. §1962(f)(1).”  Compl. ¶ 24 (emphasis added).  However, it
     appears that Plaintiffs meant to reference 15 U.S.C. § 1692f(1).

United States District Court
For the Northern District of California

Defendants' representations that a debt existed and Defendants' attempts to collect the debt did not violate the RFDCPA.  *Id.*

Fifth, PRS argues that Plaintiffs' claim must be dismissed under Federal Rule of Civil Procedure 8 ("Rule 8") because Plaintiffs have failed to plead sufficient facts to support their RFDCPA claim.  *Id.* at 7-8.

Finally, Chase argues that Plaintiffs' request for injunctive relief is improper because: (1) Plaintiffs have not alleged a viable claim, and (2) injunctive relief would conflict with a Consent Order into which Chase entered with the Office of the Comptroller of the Currency ("OCC") on April 13, 2011.  *See Id.*  The Court addresses each of these arguments in turn.

### 1. Does Section 580b Apply to Short Sales?

Defendants first argue that Plaintiffs' claims must be dismissed because Section 580b does not apply to short sales.  *See* Chase Mot. at 4; PRS Mot. at 5.  Defendants argue that this conclusion is supported by: (1) the statutory language, Chase Mot. at 5; PRS Mot. at 6; (2) the legislative history, Chase Mot. at 6; and (3) the District Court for the Southern District of California's decision in *Espinoza v. Bank of America*, 823 F. Supp. 2d 1053 (S.D. Cal. 2011), Chase Mot. at 7; PRS Mot. at 6.

Plaintiffs respond that permitting Defendants' "attempts to collect on any deficiency [would] violate the purpose of Section 580b," which is to ensure that for a purchase money mortgage "only the land can be called upon to satisfy the debt."  ECF No. 24 ("Chase Opp.") at 5 (quoting *Bank of Sonoma Co. v. Dorries*, 185 Cal. App. 3d 1291, 1294 (1986)) (internal quotation marks omitted).  Plaintiffs contend that, in light of this purpose, Section 580b should be afforded a "broad and liberal construction," even if that construction "goes beyond the narrow bounds of the statutory language*." Id.* at 6.  (*quoting Budget Realty Inc. v. Hunter*, 157 Ca. App.3d 511, 513 (1984)).  Plaintiffs also argue that the legislative history and the district court's decision in *Espinoza* do not show that Section 580b does not apply to short sales.  *See id.* at 5-6.

For the reasons set forth below, the Court agrees with Plaintiffs that Section 580b applies to short sales.  The Court begins by discussing the prior case law addressing this issue.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

a)      **Previous Decisions Addressing Whether Section 580b Applies to Short Sales**

At the outset, the Court notes that there is relatively little case law concerning whether Section 580b precludes a lender from seeking a deficiency judgment following a short sale.  The only federal case to address this issue is *Rex v. Chase Home Finance LLC*, in which Judge David O. Carter of the Central District of California held that Section 580b prohibited Chase from pursuing a deficiency judgment against two borrowers regardless of the fact that the property was sold through a short sale as opposed to a foreclosure.  *Id.*, 905 F. Supp. 2d at 1145.  While this Court will not recount the entirety of the *Rex* Court's lengthy reasoning, the *Rex* Court focused on the portion of Section 580b providing "that '[n]o deficiency judgment shall lie *in any event* after *a sale* of real property.'"  *Id*. at 1139 (quoting Section 580b).  The *Rex* Court reasoned that "[t]he phrase 'in any event'" and the fact that Section 580b did not reference a particular type of sale (*e.g.* a foreclosure sale) suggested that the Legislature intended "to have the statute apply broadly to all types of sales."  *Id.* at 1139-40.

In addition to *Rex,* three California state courts have addressed whether Section 580b applies where the property was sold pursuant to a short sale.  *See Wright v. Gerson*, G028195, 2002 WL 1360014 (Cal. Ct. App. June 24, 2002)[7]; *Banks v. JPMorgan Chase Bank, N.A.*, Case No. RG12-614875 (Cal. Super. Ct. Nov. 5, 2012)[8], *writ of mandate denied*, A137471 (Cal. Ct. App. Mar. 20, 2013)[9] (summarily denying Chase's petition for writ of mandate); *Coker v. JPMorgan Chase Bank, N.A.*, Case No. 37-2011-00087958-CU-MC-CTL, Minute Order (Cal. Super. Ct. Mar. 2, 2012)[10].  These decisions are unpublished and are therefore, not precedential.  *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1222 n.8 (9th Cir. 2003) (holding that the Court "may consider unpublished state decisions, even though such opinions have no precedential value").  Nevertheless, the Court observes that two of the three California Courts conducted a detailed analysis, including considering Section 580b's purposes, and concluded that Section 580b

---

[7] The sale in *Wright* was not technically denominated a short sale.  Nevertheless, like a short sale, the sale in *Wright* was one in which the lender agreed to permit the borrower to sell the property for an amount that would not "pay the entire amount owed to" the lender.  *See Wright*, 2002 WL 1360014 at *2.
[8] A copy of this decision has been filed as Docket No. 28 in the instant case.
[9] A copy of this decision has been filed as Docket No. 39 in the instant case.
[10] A copy of this decision has been filed as Docket No. 38 in the instant case.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    applied to the sales in those cases.  *See Wright*, 2002 WL 1360014 at *2  (holding that Section

2    580b precluded lender from holding borrower personally liable for remaining loan amount after

3    lender and borrower agreed that borrower could sell property for an amount that was "not…

4    sufficient to pay the entire amount owed to plaintiff"); *Banks*, Case No. RG12-614875 (holding

5    that Section 580b applied to short-sale transaction).  On the other hand, the *Coker* case concluded

6    in a single paragraph that Section 580b did not apply to short sales.  *See id.*, Minute Order at 1.

7         For the reasons set forth below the Court agrees with the *Rex*, *Wright*, and *Banks* Courts

8    that Section 580b applies to short sales.  The Court addresses in turn: (1) the statutory language; (2)

9    the purpose of the statute; and (3) the legislative history and the *Espinoza* decision.

               **b)**       **Statutory Language**

11        The Court begins by considering the language of Section 580b.  For the reasons set forth

12   below, the statutory language fails to persuade the Court that Section 580b's anti-deficiency

13   protections do not apply following a short sale.

14        As in effect at the time of the short sale in this case, Section 580b provided:

15   No deficiency judgment shall lie in any event after a sale [1] of real property or an
     estate for years therein for failure of the purchaser to complete his or her contract of
16   sale, or [2] under a deed of trust or mortgage given to the vendor to secure payment of
     the balance of the purchase price of that real property or estate for years therein, or
17   [3] under a deed of trust or mortgage on a dwelling for not more than four families
     given to a lender to secure repayment of a loan which was in fact used to pay all or
18   part of the purchase price of that dwelling occupied, entirely or in part, by the
     purchaser.

19        As set forth *supra*, in reaching the conclusion that Section 580b applies to short sales, the

20   *Rex* Court focused on the import of the phrase "in any event after a sale."  *Rex*, 905 F. Supp. 2d at

21   1139.  Indeed, this Court agrees with the *Rex* Court that the use of the phrase "in any event… after

22   a sale" suggests that Section 580b was intended to apply broadly such that it should be read as

23   prohibiting a deficiency judgment following the sale of a purchase money mortgagee's property

24   regardless of whether the sale is a foreclosure sale or a short sale.  *See id.*; *cf Deberard*, 20 Cal. 4th

25   at 670 (holding that statute's use of the phrase "in any event" belied defendant's argument that

26   Section 580b's protections could be waived); *Brown*, 41 Cal. 2d at 198 (finding that statute's

27   statement that "in *no event* shall there be a deficiency judgment" supported the conclusion that

28   Section 580b applied even where there was "no sale because the security" had been exhausted).

12

**United States District Court**
For the Northern District of California

1    Chase, nevertheless, argues that the statute must be limited to foreclosure sales because the

2   statute refers to "a sale… *under* a deed of trust or mortgage."  Section 580b (emphasis added).

3   Defendants argue that this phrase "means [that the sale must occur] pursuant to the 'power of sale'

4   clause in one of those documents."  Chase Mot. at 4.[11]  The Court is not persuaded that Section

5   580b's use of the word "under" justifies excluding short sales from its scope.

6    As a threshold matter, to the extent Chase argues that the phrase "sale… under a deed of

7   trust or mortgage" means that the sale must occur under the power of sale clause (*i.e.* that the sale

8   must be a *nonjudicial* foreclosure), this argument is not supported by the case law.  It is well

9   established that Section 580b applies where the property has been sold through either a nonjudicial

10   *or a judicial* foreclosure.  *See, e.g.*, *Kurtz*, 75 Cal. App. 4th at 194 (holding that Section 580b

11   applies "after a judicial or nonjudicial foreclosure"); *Birman*, 64 Cal. App. 4th at 510 (same).[12]

12    Even putting this issue aside, the Court is still not persuaded that the statute's use of the

13   word "under" in the phrase "sale… under a deed of trust or mortgage" limits the statute's

14   application to judicial and nonjudicial foreclosure sales.  While the term "under" has often been

15   used in referencing foreclosure sales, *see, e.g., Kurtz*, 75 Cal. App. 4th at 194 ("Section 580b

16   prohibits a deficiency judgment after a judicial or nonjudicial foreclosure *under* a trust deed

17   securing a purchase money loan.") (emphasis added), and might arguably suggest a sale pursuant to

18   an authority set forth in the mortgage agreement, the Court is unaware of any California decision

19   explicitly holding that a "sale under a deed of trust or mortgage" means a foreclosure sale and

20   excludes other types of sales.[13]

21   _____

[11] The Court notes that, while the text of Chase's Motion to Dismiss argues that the phrase "sale…

22   under a deed of trust or mortgage" means that the sale must occur under the power of sale clause
   (*i.e.* a *nonjudicial* foreclosure), *see* Chase Mot. at 4, the title to this section in Chase's Motion

23   suggests that Chase believes the sale must be a judicial foreclosure, *see id.* ("Section 580b Applies
   To Cases Involving Judicial Foreclosures").

24   [12] Indeed, where the Legislature intended anti-deficiency protections to apply only in cases
   involving foreclosures pursuant to the power-of-sale provision, the Legislature uses explicit

25   limiting language.  *See* Section 580d (providing that "[n]o judgment shall be rendered for any
   deficiency upon a note secured by a deed of trust or mortgage… in any case in which the real

26   property or estate for years therein has been sold by the mortgagee or trustee *under power of sale*
   contained in the mortgage or deed of trust.") (emphasis added).

27   [13] Defendants also argue that Section 580b requires a foreclosure sale because the statutory
   language states that "[n]o *deficiency judgment* shall lie… after a sale," Cal. Code Civ. Proc. § 580b

28   (emphasis added) and a deficiency judgment has traditionally been defined as "[t]he amount still
   owed when the property secured by a mortgage is sold at a *foreclosure sale*…."  DEFICIENCY,

13

1    Moreover, the Court observes, as did the *Rex* Court, that had "the California legislature

2    wished to limit the application of Section 580b to only certain modes of sale, it could have used"

3    more explicit limiting language. *Rex*, 905 F. Supp. 2d at 1139.  For example, in California Code of

4    Civil Procedure Section 580d, which affords anti-deficiency protection not only to purchase money

5    mortgagees, but also to non-purchase money mortgagees, the Legislature used the following

6    language: "No judgment shall be rendered for any deficiency... in any case in which the real

7    property... has been sold by the mortgagee or trustee under power of sale contained in the mortgage

8    or deed of trust."  Cal. Code Civ. Proc. § 580d.  Section 580d's explicit reference to a sale "under

9    power of sale contained in the mortgage or deed of trust" clearly and unequivocally limits the

10   statute's scope to nonjudicial foreclosures, which, as discussed *supra*, are sales pursuant to the

11   power of sale provision in a mortgage agreement.  *See, e.g., Birman*, 64 Cal. App. 4th at 514 n.3

12   (holding that Section 580d prohibited "any deficiency judgment following a nonjudicial"

13   foreclosure sale).  The absence of such clear and unequivocal limiting language in Section 580b

14   weighs against finding that Section 580b's anti-deficiency protections are limited based on the type

15   of sale used to accomplish the transaction.  *See Rex*, 905 F. Supp. 2d at 1139-40.

16       Thus, it is not clear based on Section 580b's language that the statute's application is

17   necessarily limited to foreclosure sales and that the statute cannot also be applied following a short

18   sale.  Accordingly, the Court proceeds to consider the purpose of the statute.

19

20

21

22   _____

Black's Law Dictionary (9th ed. 2009) (emphasis added); *see also* Cal. Civ. Proc. Code § 726
(providing for a deficiency judgment following a "foreclosure sale").  The Court is not persuaded.
As recognized in *Venable*, a "deficiency judgment 'is [in essence] nothing more than the difference
between the security and the debt'."  *id.*, 233 Cal. App. 2d at 301.  Thus, a lender who pursues a
borrower for the amount remaining on a loan may be said to be pursuing a deficiency judgment
even where there has been no foreclosure sale.  *See id.* ("Thus, when the vendor under a security-
type contract for the sale of land receives a personal money judgment against the vendee for breach
of this contract without first going against the security, he is, in effect, receiving a deficiency
judgment.").  Consequently, if Chase were to pursue a legal action to hold Plaintiffs responsible for
the deficiency on the Second Note following the short sale, Chase would, in essence, be seeking a
deficiency judgment.  *See id.*  Thus, the reference to a deficiency judgment in the statute does not
persuade the Court that Section 580b's anti-deficiency protections do not apply following a short
sale.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

### c)      Statutory Purpose

The Court finds that Section 580b's purposes support applying Section 580b following a short sale and that this factor weighs strongly in Plaintiffs' favor.

As set forth *supra*, Section 580b's purposes are twofold.  First, Section 580b, "places the risk of inadequate security on the purchase money mortgagee." *DeBerard*, 20 Cal. 4th at 663-64 (quoting *Roseleaf*, 59 Cal. 2d at 42).  Second, in the event that there is a "decline in property values during a general or local depression… prevent[] the aggravation of [an economic] downturn" by ensuring that "defaulting purchasers [are not] burdened with large personal liability."  *Id.* at 664 (quoting *Roseleaf*, 59 Cal. 2d at 42).

California Courts have emphasized that, in determining whether Section 580b applies in a particular context, the Legislature's purpose is a "paramount consideration." *Prunty,* 37 Cal.App.3d at 436 (holding that "the Legislature's 'purpose' in adopting the 1963 amendment of section 580b [was] the paramount consideration in our construction of the language employed in it"); *see also Conley v. Matthes*, 56 Cal. App. 4th 1453, 1461 (1997) ("[T]he language of section 580b has been liberally construed to extend antideficiency protection beyond the standard transaction where the circumstances of the case indicate the policies of the statute will be served.") (citing *Spangler v. Memel*, 7 Cal.3d 603, 610  (1972))[14].

Following this principle, courts have given section 580b a broad interpretation.  *See Prunty,* 37 Cal.App.3d at 436 (recognizing that courts have "given [Section 580b] a broad and liberal construction that often goes beyond the narrow bounds of the statutory language").  For example, Section 580b by its express language prohibits "deficiency judgment… after a sale."  However, in light of the statute's purposes, California state courts have held that Section 580b should be applied to prohibit deficiency judgments in cases where the lender has opted to forgo the foreclosure sale in favor of seeking to recover the remaining loan balance directly from the borrower.  *See, e.g., Frangipani v. Boecker*, 64 Cal. App. 4th 860, 865 (1998) (holding that Section 580b precluded

---

[14] *Id.* at 1464 ("*Roseleaf* itself points out application of Code of Civil Procedure section 580b is required if the circumstances of the case indicate the purposes of the statute will be served") (citing *Roseleaf*, 59 Cal. 2d at 41)); *Laforgia v. Kolsky*, 196 Cal. App. 3d 1103, 1112 (1987) (holding that, in determining whether Section 580b should apply "to a particular variation on a standard purchase money mortgage," "the proper inquiry is whether the facts are such that the purposes of the antideficiency statute will be advanced").

15

United States District Court
For the Northern District of California

1    lender from proceeding directly against borrower because, if lenders were permitted to pursue

2    borrowers directly, lenders "would never be concerned that the fair market value of the land was

3    the sole means of recovering the property's sales price" which would undermine the statute's

4    purpose of "discourage[ing] land sales that are unsound because the land is overvalued"); *Venable*

5    *v. Harmon*, 233 Cal. App. 2d 297, 302 (1965) (holding that Section 580b prohibited lender from

6    proceeding against borrower directly because permitting the lender to recover "a personal judgment

7    and retain title to the land" would be contrary to Section 580b's purpose of preventing "defaulting

8    purchasers [from] los[ing] [their] land and [being] burdened with personal liability") (internal

9    citation and quotation marks omitted).[15]  Similarly, in *Birman*, the Court found that Section 580b

10   prohibited defendant lenders from using the deficiency remaining after a foreclosure sale of

11   plaintiffs' property to offset a judgment for attorney's fees and costs the lenders owed to the

12   plaintiffs in a lawsuit.  *See id.*, 64 Cal. App. 4th at 507-14.  The *Birnam* Court reasoned that, while

13   the offset was not technically a "deficiency judgment" as referenced in Section 580b, "allow[ing]

14   [the offset] would contravene the economic policy considerations underlying section 580b."  *Id.* at

15   510.  Thus, in determining whether Section 580b should apply here, this Court must consider

16   whether affording Plaintiffs protection following the short sale would further Section 580b's

17   purposes.

18        Here, the Court finds that applying Section 580b promotes both of Section 580b's dual

19   purposes.  First, just as applying Section 580b to foreclosure sales "places the risk of inadequate

---

[15] Chase notes that in *In re Prestige Ltd. P'ship-Concord*, the Ninth Circuit cautioned that *Frangiapani*, *Venable*, and similar cases, do not stand for the broad proposition that no prior sale is ever required to invoke Section 580b's anti-deficiency protections. *Id.*, 234 F.3d 1108, 1118 n.5 (9th Cir. 2000); *see* ECF No. 26 ("Chase Reply") at 3.  Chase further notes that the *Prestige* Court explained that this line of cases stands for the more narrow proposition that Section 580b's anti-deficiency protections apply even though there has been no sale if the creditor still has a security interest in the land and therefore still has the ability to conduct a sale. *In re Prestige*, 234 F.3d at 1118 n.5.  Nevertheless, notwithstanding the Ninth Circuit's explanation of the narrow scope of the *Frangiapani*/*Venable* line of cases, it remains true that these courts held, after analyzing Section 580b's purposes, that Section 580b precluded a deficiency judgment even though the lender was not seeking such a judgment "after a sale," as required by the statute. Cal. Code Civ. Proc. § 580b. These decisions therefore support the conclusion that, in determining whether Section 580b should apply, the Court should broadly construe the statutory language to affect the statute's purposes.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1  security on the purchase money mortgagee," *DeBerard*, 20 Cal. 4th at 663-64, barring a deficiency

2  judgment following a short sale ensures that the lender and not the borrower is required to assume

3  the risk that the security may prove inadequate.

4        Second, applying Section 580b to short sales promotes the statute's purpose of mitigating

5  the damage caused by declining property values during an economic depression. *DeBerard*, 20

6  Cal. 4th at 663-64. Indeed, short sale transactions gained prominence as an alternative to

7  foreclosures during the subprime mortgage crisis of 2008 and the following economic downturn.

8  *See* 2 Law of Real Estate Financing § 12:10 ("The subprime mortgage crisis of 2008 and attendant

9  decline in property values ignited a new entry to the mortgagee options upon default—the so-called

10  short sale."). Were the Court to construe Section 580b as not applying after a short sale, banks

11  would have a new tool that would allow them to both collect the proceeds of the sale of the home

12  *and* proceed against the borrower directly (a result that is undoubtedly barred if a bank

13  accomplishes the sale through a foreclosure sale). Borrowers would "los[e] [their] land and [be]

14  burdened with personal liability," and the severity of any economic downturn would be enhanced.

15  *Venable*, 233 Cal. App. 2d at 302. Thus, construing Section 580b as providing anti-deficiency

16  protection following short sales promotes the statute's purpose of "prevent[ing] the aggravation of

17  [the] downturn" by ensuring that defaulting borrowers are not "burdened with large personal

18  liability." *DeBerard*, 20 Cal. 4th at 664.

19        For the reasons set forth above, the Court finds that construing Section 580b as applying to

20  short sale transactions serves Section 580b's purposes. Satisfying the statutory purpose weighs

21  heavily in favor of interpreting Section 580b as providing anti-deficiency protection following

22  short sales. *See Prunty,* 37 Cal. App. 3d at 436 ("[T]he Legislature's 'purpose' in adopting the

23  1963 amendment of section 580b is the paramount consideration in our construction of the

24  language employed in it.").

25             **d)**     **Legislative History and *Espinoza***

26        Next, the Court considers Defendants' arguments that the legislative history associated with

27  California Code of Civil Procedure Section 580e ("Section 580e") and Judge Gonzalez's decision

28

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   in *Espinoza*, which construed Section 580e, support Defendants' position that Section 580b does

2   not apply after a short sale.

3       Section 580e was enacted in January 2011 and provides anti-deficiency protection for

4   borrowers following short sales. As originally enacted, the statute provided that:

> [N]o judgment shall be rendered for any deficiency under a note secured by a first
> deed of trust or first mortgage for a dwelling of not more than four units, in any case
> in which the trustor or mortgagor sells the dwelling for less than the remaining
> amount of the indebtedness due at the time of sale with the written consent of the
> holder of the first deed of trust or first mortgage.

8   Cal. Code Civ. Proc. § 580e (January 2011).

9       As originally enacted, the statute only provided protection against deficiency judgments

10  sought by the holder of a *first* deed of trust or mortgage. *See* 2011 Cal. Legis. Serv. Ch. 82 (S.B.

11  458) ("Senate Bill 458"). However, in July 2011, the Legislature passed Senate Bill 458, which

12  expanded Section 580e to protect borrowers against deficiency judgments sought by *any* deed or

13  mortgage holder so long as the deed or mortgage holder provides its written consent to the sale.

14  *Id.*[16]

15      Chase argues that the fact that "the California Legislature expressly enacted Section 580e to

16  apply" to short sales provides "the best evidence that Section 580b was not intended to apply to

17  situations involving short sales...." Chase Mot. at 6. Chase also argues that the legislative history

18  associated with Section 580e shows that, prior to enacting Section 580e, there was no protection

19  against deficiency judgments in cases involving short sales. Specifically, the June 20, 2011

20  Analysis of Senate Bill 458 from the Assembly Committee on Banking and Finance states that

21  Senate Bill 458 "builds on SB 931... which *first* provided anti-deficiency protection for short

22  sales." Chase Mot., Ex. 3 (emphasis added). The Court disagrees.

---

[16] The amended version of Section 580e omits the word "first" from the phrase "first deed of trust
or first mortgage." *See* Cal. Civ. Proc. Code § 580e (July 2011) ("No deficiency shall be owed or
collected, and no deficiency judgment shall be requested or rendered for any deficiency upon a
note secured solely by a deed of trust or mortgage for a dwelling of not more than four units, in any
case in which the trustor or mortgagor sells the dwelling for a sale price less than the remaining
amount of the indebtedness outstanding at the time of sale, in accordance with the written consent
of the holder of the deed of trust or mortgage...."). Notably, Section 580e as now enacted would
likely preclude Chase from holding Plaintiffs liable for the deficiency on the Second Note.
However, the short sale in this case predates the amendments to Section 580e and Plaintiffs have
not argued that Section 580e applies.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1      The enactment of Section 580e and the legislative history associated with this statute are

2  not necessarily inconsistent with construing Section 580b as applying to short sales.  As recognized

3  by the *Rex* Court, while Section 580b applies only to purchase money loans, Section 580e applies

4  more broadly to any "note secured solely by a deed of trust or mortgage for a dwelling of not more

5  than four units."  Section 580e(a)(1); *see also Rex*, 905 F. Supp. 2d at 1142.  For non-purchase

6  money loans, anti-deficiency protections are provided not by Section 580<u>b</u> but rather by California

7  Code of Civil Procedure Section 580<u>d</u>.  As discussed *supra*, Section 580d uses clear and explicit

8  terminology to limit its protections to cases in which the property has "been sold by the mortgagee

9  or trustee under power of sale contained in the mortgage or deed of trust" (*i.e.* a nonjudicial

10  foreclosure).  Cal. Civ. Proc. Code § 580d.  Thus, unlike Section 580<u>b</u>, Section 580<u>d</u>  would

11  undoubtedly not provide protection following a short sale.

12      It follows that for *non*-purchase money loans, *i.e.* those covered only by Section 580<u>d</u> and

13  not by Section 580<u>b</u>, there was undoubtedly no anti-deficiency protection following a short sale

14  prior to the enactment of Section 580e.  Consequently, even if Section 580b provided protection

15  against deficiency judgments after a short sale for purchase money loans, the Legislature's

16  statements that Section 580e "first provided anti-deficiency protection for short sales" would still

17  be true with respect to *non*-purchase money loans.  Chase Mot., Ex. 3.  Indeed, an October 2010

18  letter from Senator Denise Ducheney states that "the purpose of [Section 580e]… is to protect

19  distressed homeowners who have *non*-purchase money recourse loans" from deficiency judgments

20  "after a short sale."  Senate Daily Journal (Oct. 8, 2010) at 5260-61 (emphasis added).[17]  Thus, the

21  fact that the Legislature found it necessary to enact Section 580e and the Legislature's statements

22  in the legislative history for Section 580e do not persuade the Court that Section 580b did not or

23  does not provide protection after a short sale for purchase money mortgagors.

24      The Court finds that Defendants' reliance on *Espinoza* is misplaced for similar reasons.

25  The *Espinoza* plaintiffs, who were borrowers who sold their property through a short sale, sought a

26  declaration from the Court that a lien-holder was prohibited from pursuing a deficiency judgment

27  against them based on Section 580<u>d</u> and Section 580<u>e</u>.  *Id.*, 823 F. Supp. 2d at 1055.  The *Espinoza*

28

---

[17] available at ftp://www.leginfo.ca.gov/pub/senate-journal/sen-journal-0x-20101007-5217.PDF.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   Court held that Section 580_d_ did not apply because Section 580_d_ does not apply to short sales.  *Id.*

2   at 1057.  The *Espinoza* Court further held that Section 580_e_ did not apply because it had not yet

3   been adopted at the time of the short sale.  *Id.* 1057-58.

4        Significantly, the *Espinoza* Court did not explicitly address the issue of whether Section

5   580_b_ applied to short sales.  Indeed, *Espinoza* makes only a single, passing reference to Section

6   580b.  *Id.* at 1060 ("Even if the security is insufficient, the antideficiency statutes (§§ 580a, 580b,

7   580d) may limit or bar a judgment against the debtor for a deficiency.") (quoting  *Bank of Am. v.*

8   *Graves*, 51 Cal. App. 4th 607, 611 (1996)).  The lack of discussion of the applicability of Section

9   580b to short sales may have been a result of the fact that the loans in *Espinoza* were issued as a

10   means of refinancing the borrowers' home and, under the precedent of the time, would not have

11   been subject to Section 580_b_.  *Id.* at 1055 n.1; *Union Bank v. Wendland*, 54 Cal. App. 3d 393, 400

12   (1976) (holding that loan issued to defendant to refinance his property was not subject to Section

13   580b).[18]  In any event, Defendants' reliance on *Espinoza* is misplaced because this case did not

14   address the issue of whether Section 580_b_ applies to short sales.[19]

15        While not raised by Defendants, the Court additionally notes that certain provisions of the

16   legislative history associated with the recent amendments to Section 580b describe Section 580b as

17   applying to foreclosures.  *See, e.g.,* CA B. An., S.B. 1069 Sen., 6/19/2012, California Bill Analysis,

18   S.B. 1069 Sen., 6/19/2012  (Section 580b "[p]rohibits a secured lender under a deed of trust or

19   mortgage, following a *judicial foreclosure*, from obtaining a deficiency judgment against the

20   borrower, but only to the extent that the loan is a 'purchase-money loan'") (emphasis added);

21   Senate Bill 1069 ("Existing law provides that no deficiency judgment shall lie following a judicial

---

[18] The recent amendment to Section 580b abrogated *Union Bank* and extended the statute's protections to "any loan, refinance, or other credit transaction… which is used to refinance a purchase money loan, or subsequent refinances of a purchase money loan."  Cal. Civ. Proc. Code § 580b.

[19] Defendants argue that this case is similar to *Espinoza* in that, similar to Plaintiffs, the *Espinoza* borrowers negotiated the short sale transaction with the lenders and the parties agreed that: (1) the lenders would release their security interests to allow the sale to go forward, and (2) the borrowers would continue to be liable for the deficiencies on the loans following the short sale.  *See* Chase Mot. at 6-7; *Espinoza*, 823 F. Supp. 2d at 1059 ("Here, the parties negotiated the terms of the short sale, and the short sale occurred, before section 580e was enacted.  Accordingly[,] section 580e does not apply to this case.").  This Court will address the significance of Plaintiffs' and Chase' negotiations, particularly their agreement that Chase would release its security interest, *infra* in Section III(B)(2).

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1    foreclosure with respect to, among other things, a deed of trust or mortgage given to… secure

2    repayment of a purchase money loan….").  These passages also do not persuade the Court that

3    Section 580b does not apply after a short sale.  While the aforementioned statements generally

4    describe Section 580b as applying following a foreclosure sale, they do not indicate that the

5    Legislature intended that Section 580b would not apply if the property was sold through another

6    form of sale, such as a short sale.  Indeed, at least one note in the legislative history indicates that

7    the Legislature was cognizant of the fact that the plain language of Section 580b might permit its

8    application to short sales.  *See* CA B. An., S.B. 1069 Sen., 5/1/2012, California Bill Analysis, S.B.

9    1069 Sen., 5/1/2012 ("Staff notes that while many argue that the provision is limited to judicial

10   foreclosures, some legal experts contend that the plain language of the statute allows application…

11   to other types of sales.").

12         Accordingly, for the reasons set forth above, neither the legislative history nor the *Espinoza*

13   decision persuade the Court that Section 580b does not apply after short sales.

                    e)         **Conclusion Regarding Section 580b and Short Sales**

15         While it is by no means clear whether Section 580b applies to short sales, the Court

16   concludes that it does.  As set forth above, it is not clear that the statutory language "sale… under a

17   deed of trust or mortgage" limits Section 580b's applications to foreclosure sales.  Moreover, the

18   statutory language stating that Section 580b applies "*in any event*… after sale" supports a broad

19   application of Section 580b.  Furthermore, applying Section 580b to short sales promotes Section

20   580b's dual purposes of placing the risk of inadequate security on the purchase money mortgagee,

21   and preventing the aggravation of an economic downturn by ensuring that defaulting purchasers

22   are not burdened with large personal liability.  *See DeBerard*, 20 Cal. 4th at 663-64.  California

23   Courts have heavily emphasized the significance of the statutory purpose in determining whether

24   Section 580b should be applied to a particular transaction.  Finally, the Court is not persuaded that

25   the enactment of Section 580e, the legislative history associated with that section, the legislative

26   history associated with the recent amendments to Section 580b, or the *Espinoza* decision provide a

27   sufficient basis to hold that Section 580b does not apply following a short sale.  Accordingly, to the

28

21

extent Defendants seek dismissal on the ground that Section 580b does not apply to short sales, Defendants' Motions are denied.

### 2.    Waiver

Chase also argues that Plaintiffs' RFDCPA claim fails because Plaintiffs "[w]aived the [a]pplication of Section 580b" by agreeing to the terms of the February Letter. Chase Mot. at 8. In the February Letter, Chase agreed to "release [its] security interest in the… Property." February Letter. In exchange, Plaintiffs agreed to pay Chase $8,500 and to remain "responsible for the deficiency balance remaining on the Loan…." *Id.* Chase argues that when Plaintiffs agreed with Chase that Chase would release its security interest, Plaintiffs removed the Second Note from the scope of Section 580b. *See* Chase Mot. at 9 (citing *Jack Erickson & Assoc. v. Hesselgesser*, 50 Cal.App.4th 182 (1996)).

Plaintiffs respond that Chase's argument must fail because, in *Deberard*, the California Supreme Court held that parties may not contractually waive the protections of Section 580b. *See* Chase Mot. at 7 (citing *Deberard*, 20 Cal. 4th at 659). As set forth below, although the Court does not agree that *Deberard*'s prohibition on waivers applies in this case, the Court does agree that Section 580b continued to apply to the Second Note notwithstanding Chase's release of its security interest.

As a threshold matter, the Court must distinguish between two ideas: (1) waiver, and (2) destruction. *Deberard* primarily addresses waiver. In *Deberard*, two borrowers renegotiated their purchase money loan and agreed to waive Section 580b's protections in exchange for certain concessions by the deed holder, *e.g.* reducing the borrowers' payments. *See id.*, 20 Cal. 4th at 662. Notably, the deed holder did not agree to release its security interest in the borrowers' property. *Id.* The *Deberard* Court held that the borrowers' agreement with the deed holder constituted a prohibited waiver of Section 580b's protections. *See id.* at 663. In concluding that Section 580b could not be waived, the Court reasoned that "[i]f the purchase money creditor retains an interest in the original property, the debtor cannot be held for a deficiency." *Id.* (quoting *Palm v. Schilling*, 199 Cal. App. 3d 63, 76 (1988)). Based on this language, it appears that an impermissible *waiver*

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   occurs where a purchase money mortgagor waives the protections of Section 580b while permitting

2   the purchase money mortgagee to retain a security interest in the original property.

3          The second idea is the concept of *destruction*.  While *Deberard* held that there could be no

4   *waiver* of the protections of Section 580b, *Deberard* acknowledged that parties may "*destroy*" the

5   purchase money nature of a transaction by extinguishing the lender's security interest in the

6   original property.  *See id.* ("If the purchase money creditor does not wish to accept the risk that the

7   property will be lost through foreclosure by another secured creditor, the remedy is to either

8   foreclose himself or destroy the purchase money nature of the transaction") (quoting *Palm*, 199

9   Cal. App. 3d at 76) (emphasis added).  If the purchase money nature of the transaction is destroyed,

10  Section 580b no longer applies.  *See Goodyear v. Mack*, 159 Cal. App. 3d 654 (1984), *disapproved*

11  *of on other grounds by DeBerard*, 20 Cal. 4th at 671 (holding that Section 580b no longer applied

12  where buyers of property encumbered with a purchase money mortgage arranged for re-

13  conveyance of the trust deed in exchange for a new note secured by different property); *cf In re*

14  *Prestige*, 234 F.3d at 1117 (holding that "where the security has been lost due to a violation of §

15  726 and, consequently, there has not been and can never be a sale of the property, § 580b does not

16  apply").[20]  Thus, destruction and waiver are distinct concepts.  While waiver is prohibited,

17  destruction is not.  *See Deberard*, 20 Cal. 4th at 663.

18         Here, in the February Letter, Chase released its security interest in the property, which

19  arguably *destroyed* the purchase money nature of the parties' transaction.  Thus, this is not an

20  instance in which the parties have engaged in a prohibited *waiver* of Section 580b's protection.

21  Consequently, the question in this case is whether Section 580b should still apply even though the

22  purchase money nature of the transaction has arguably been *destroyed*.  Under the circumstances of

23  this case, the Court finds that Section 580b should still apply.

24

25  ────────────────

[20] Throughout its moving papers, Chase does not distinguish between waiver and destruction.  *See,*
26  *e.g.,* Chase Mot. at 9; Chase Reply at 5.  This may be due to the fact that Chase, in making its
    waiver argument, relied heavily upon *Jack Erickson & Associates v. Hesselgesser* and the *Jack*
27  *Erickson* Court used the term "waiver" to describe a situation that might be more accurately
    characterized as involving a destruction of the purchase money nature of the transaction.  *See id.*,
28  50 Cal. App. 4th 182, 188-89 ("A second waiver occurred when he induced respondent to execute
    a deed of reconveyance and sold the property.  Respondent was left without security.").

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1    In this case, Chase relinquished its security interest securing the Second Note concurrently

2 with, and for the express purpose of allowing, a short sale transaction which was ostensibly

3 designed to satisfy *Chase's* First Note. *See* Chase Mot., Ex. A at 3 (February 15, 2011 letter from

4 Chase agreeing to the short sale); *id.* at 2 (February 17, 2011 letter ("February Letter") from Chase

5 agreeing to relinquish its security interest).[21]   While the First and Second Notes are separate loans,

6 they both represent debts on the Property.  Thus, Chase is, in effect, requesting that the Court hold

7 that Chase may recover part of the debt owed to it through the sale of the Property, and then hold

8 Plaintiffs' personally liable for the remainder.  Significantly, had Chase issued a single loan to

9 cover the entire debt on the Property, Section 580b would prohibit Chase from seeking the

10 deficiency.[22]   The result should not be different here simply because, rather than issuing one loan,

11 Chase issued two loans and then, concurrently with and for the purpose of allowing a short sale to

12 satisfy its first loan, released its security interest in the second loan.  Permitting a deficiency in this

13 case would be inconsistent with Section 580b's purpose of preventing "defaulting purchasers [from

14 being] burdened with… personal liability." *DeBerard*, 20 Cal. 4th at 664.

15    Moreover, while not alleged in the Complaint, there appears to have been an agreement

16 between the parties that any funds beyond the amount needed to satisfy the First Note would be

17 applied towards the Second Note, and approximately $80,000 actually was applied to the Second

18 Note. *See* Tr. at 8:11-19; 8:20-9:11.  This suggests that the parties intended that the short sale

19

20 [21] Neither *Jack Erickson, Goodyear*, nor *In re Prestige* involved a circumstance in which a lender

21 agreed to release its security interest as part of a transaction designed to allow a short sale to occur to satisfy a more senior debt held by the same lender. *See In re Prestige*, 234 F.3d at 1117 (holding

22 that Section 580b no longer applied where lender's security interest was lost due to a violation of § 726); *Jack Erickson*, 50 Cal. App. 4th at 185 (holding that Section 580b did not prohibit lender

23 from pursuing borrower for deficiency where lender agreed to release its security interest to permit sale of property so that borrower could pay off debts owed to two other banks, which had initiated

24 foreclosure proceedings); *Goodyear*, 159 Cal. App. 3d at 659 (holding that section 580b no longer applied where lender released security interest in original property released in exchange for a

25 security interest in an alternate property and subsequently sought to hold borrower personally liable after a more senior deed holder on the alternate property foreclosed on that property).

26 [22] Notably, had Chase foreclosed on the Property pursuant to the power of sale provision in the First Deed of Trust, rather than engaging in a short sale, Chase would have similarly been divested

27 of the security interest securing the Second Note.  Nevertheless, in such a scenario, Section 580b would undoubtedly preclude Chase from recovering a deficiency judgment on the Second Note.

28 *See Brown*, 41 Cal.2d at 198 (holding that Section 580b prohibited junior lienholder whose security interest in property was destroyed when senior lienholder foreclosed from seeking a deficiency judgment against borrower).

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   would not only address the First Note, but, if possible, the Second Note as well.  To the extent

2   Chase released its interest securing the Second Note for the purposes of permitting a sale that

3   would generate funds that would be used to satisfy that note, this fact further supports the

4   conclusion that permitting Chase to recover the deficiency on the Second Note would be

5   inconsistent with Section 580b's purposes.  *See Venable*, 233 Cal. App. 2d at 302 (holding that

6   Section 580b prevents the aggravation of downturns by prohibiting borrowers from losing their

7   land and being burdened with personal liability).

8        Accordingly, the Court rejects Chase's argument that Section 580b no longer applies

9   because Chase released its security interest in the Property in the February Letter.

### 3.     Mortgage Loans are Covered by the RFDCPA

11        PRS also argues that dismissal is appropriate because the RFDCPA does not apply to

12   mortgage loans.  PRS Mot. at 1.  The Court disagrees.

13        At the outset, the Court defines several key terms.  As used in the RFDCPA, "[t]he term

14   'debt collection' means any act or practice in connection with the collection of consumer debts."

15   Cal. Civ. Code § 1788.2(b).  "The term 'debt collector' means any person who, in the ordinary

16   course of business, regularly, on behalf of himself or herself or others, engages in debt collection."

17   Cal. Civ. Code § 1788.2(c).  "The terms 'consumer debt' and 'consumer credit' mean money,

18   property or their equivalent, due or owing or alleged to be due or owing from a natural person by

19   reason of a consumer credit transaction."  Cal. Civ. Code § 1788.2(f).  Finally, "[t]he term

20   'consumer credit transaction' means a transaction between a natural person and another person in

21   which property, services or money is acquired on credit by that natural person from such other

22   person primarily for personal, family, or household purposes."  Cal. Civ. Code § 1788.2(e).

23        Here, PRS concedes that it is "a debt collector within the meaning of the" RFDCPA.  *See*

24   Tr. at 38:11-15 .[23]   Rather, PRS argues that Plaintiffs' claim fails because a "mortgage loan is not a

---

[23] Chase also has not disputed the fact that it is a debt collector under the RFDCPA.  Even if Chase had made such an argument, it would be unavailing.  *See Huy Thanh Vo v. Nelson & Kennard*, CIV. S-12-2537 LKK, 2013 WL 1091207, at *8 (E.D. Cal. Mar. 15, 2013) (holding that bank seeking to collect a debt owed to it was a debt collector under the RFDCPA).

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

'consumer debt' within the meaning of" Section 1788.2(f). *See* PRS Mot. at 7. Several courts have held that mortgage loans are not a "consumer debt" within the meaning of the Acts. *See* PRS Mot. at 7; *see, e.g., Dunfee v. Truman Capital Advisors, LP*, 12-CV-1925 BEN DHB, 2013 WL 1285152, at *5 (S.D. Cal. Mar. 25, 2013) (stating that "[b]ased on the language of the statute, courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA" and holding that "[b]ecause a home loan is not a 'debt' under the Rosenthal Act," plaintiffs' claim that defendants "made abusive collection calls in connection with [plaintiffs'] home loan… fail[ed] on the pleadings"); *Pontiflet-Moore v. GMAC Mortgage*, 2:09-CV-01685-MCEDAD, 2010 WL 432076, at *6 (E.D. Cal. Jan. 15, 2010) ("[T]he courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA, therefore a foreclosure does not qualify as an unfair debt collection."). While these rulings generally have not included much analysis, some have indicated that their conclusions are based on the "language of the statute." *Dunfee,* 2013 WL 1285152 at *5. This Court is not however, persuaded that the statutory language categorically excludes mortgage loans from the definition of "consumer debt."

As used in the RFDCPA, a "consumer debt" is one in which: (1) "money" is "due or owing"; (2) "by reason of a… transaction"; (3) wherein "property… is acquired on credit"; (4) "primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e)-(f). In a residential mortgage loan transaction like the one involved in this case, the borrower owes a debt (condition 1) to the lender as a result of the lender's provision of funds for the borrower to acquire "property" (conditions 2 and 3) which the borrower uses as a residence, *i.e.* "for personal, family, or household purposes" (condition 4). *Id.* Thus, nothing about the express language of the RFDCPA excludes a residential mortgage from the definition of "consumer debt." Accordingly, Plaintiff is not precluded from bringing a RFDCPA claim based on the First and Second Notes.[24]

---

[24] Notably, a number of courts, including this Court, have recognized that foreclosure activities do not fall within the scope of the RFDCPA or the FDCPA (collectively, "Acts"). *See, e.g., Garcia v. Am. Home Mortgage Servicing Inc.*, 11-CV-03678-LHK, 2011 WL 6141047, at *4 (N.D. Cal. Dec. 9, 2011). However, the exclusion of foreclosure activities from the Acts is not based on the fact that mortgage loans are not consumer debts, but rather on the fact that a foreclosure is not a "debt collection" activity. *Id.* As explained by the Court in *Hulse v. Ocwen Federal Bank, FSB*, a foreclosure is not a debt collection activity because, in foreclosing, the lender is not "attempt[ing] to collect funds from the debtor" but is rather exercising its right to "foreclos[e] [on] its interest in

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Thus, for the reasons set forth above, PRS's argument that Plaintiffs' claim should be dismissed because a mortgage loan is not a consumer debt fails.[25]  *Cf, e.g., Walters v. Fid. Mortgage of CA*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (holding that plaintiff could plead an RFDCPA claim based on defendant's "improper conduct in the course of servicing her [mortgage] loan" because such conduct arose "out of debt collection activities beyond the scope of the ordinary foreclosure process").

### 4. Whether Plaintiffs' RFDCPA Claim is Barred Because Section 580b Did Not Extinguish Their Debt

The Court next addresses PRS's argument that, even if Section 580b applies, Section 580b merely prohibits a lender from seeking a deficiency judgment and does not extinguish the debt. *See* PRS at 5.  PRS argues that, because Plaintiffs' debt relating to the Second Note still exists, it is still "due and owing."  *Id.* at 6.  Consequently, PRS argues, Plaintiffs' claim that Defendants violated the RFDCPA by misrepresenting that Plaintiffs owed a debt and by seeking to collect the debt fails.  *Id.*  The Court agrees in part and disagrees in part with PRS's argument.

---

the property." *Id.*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (holding that "foreclosing on a trust deed is an entirely different path" than "collecting funds from a debtor").  Thus, while foreclosure activities are not covered by the Acts, other improper activities in connection with mortgage loans may be subject to the Acts.  *Cf Walters v. Fid. Mortgage of CA*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (holding that plaintiff could plead an RFDCPA claim based on defendant's "improper conduct in the course of servicing her [mortgage] loan" because such conduct arose "out of debt collection activities beyond the scope of the ordinary foreclosure process").  Here, the Property was not sold through a short sale and not through a foreclosure sale, and accordingly, it is not clear that the foreclosure exemption applies.  Moreover, even assuming short sale activities are exempt from the Acts, Plaintiffs are not merely complaining that Defendants engaged in a short sale.  Plaintiffs are complaining that Defendants misrepresented the truth in order to collect Plaintiffs' outstanding debt after the short sale.  Thus, Plaintiffs' claims arise "out of debt collection activities beyond the scope of the ordinary [short sale] process." *Id.*

[25] At the March 21, 2013 hearing, PRS additionally argued that the RFDCPA does not apply because, once Chase released its security interest, the parties' transaction ceased to be a consumer credit transaction under the Act because "there's nothing that they obtained on credit… now." *See* Tr. 39:12-23.  This argument was not made in PRS's Motion to Dismiss.  Accordingly the Court disregards it.  Even if this argument had been made, the Court does not find this argument persuasive because, regardless of whether Chase has now released its security interest, when the parties' transaction was executed, it was one in which "property… [was] acquired on credit." Cal. Civ. Code § 1788.2(e).  Chase cites no authority for the proposition that its release of its security interest in the property changes the "consumer credit" nature of the transaction and removes the debt from the scope of the RFDCPA.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    As a threshold matter, the Court agrees, that even where Section 580b applies, Section 580b

2    only "eliminates a creditor's ability to seek a deficiency judgment,… it does not eliminate the

3    underlying debt." *Herrera v. LCS Fin. Servs. Corp. ("Herrera I")*, C09-02843 TEH, 2009 WL

4    2912517, at *8 (N.D. Cal. Sept. 9, 2009) (citing *Mortgage Guarantee Co. v. Sampsell,* 51 Cal.

5    App. 2d 180, 185 (1942)); *see also* PRS Mot. at 5.  Thus, the mere fact that Defendants attempted

6    to collect upon the debt did not violate the RFDCPA.  *See id.* at *8 (dismissing plaintiff's

7    complaint because it "only [pled] a claim based on the fact, and not the content, of [defendant's]

8    collection efforts").

9    Rather, in order for Plaintiffs to state a claim under the RFDCPA based on Defendants'

10   attempts to collect on the Second Note, Plaintiffs must allege facts showing that Defendants'

11   communications "misrepresented the nature" of the debt.  *Id.*  Whether there has been a

12   misrepresentation is evaluated from the perspective of the "least sophisticated investor."  *Herrera*

13   *v. LCS Fin. Servs. Corp. ("Herrera II")*, C09-02843 TEH, 2009 WL 5062192, at *4 (N.D. Cal.

14   Dec. 22, 2009).  "If the least sophisticated debtor would 'likely be misled' by a communication…

15   the debt collector has violated the Act." *Id.*  For example, in *Herrera II*, the Court found that the

16   plaintiff stated a claim for misrepresentation in violation of the FDCPA and RFDCPA where the

17   plaintiff alleged that the defendant sent her a letter "stating that her debt [was] 'due and owing'

18   when that debt [was] subject to [Section 580b]" and the letter did "not advise the [plaintiff] as to

19   the significance of section 580b." *Id.* at *7 (denying motion to dismiss amended complaint).  The

20   Court reasoned that the "least sophisticated debtor could be misled by [such] a letter" because it did

21   "not advise the [plaintiff] as to the significance of section 580b." *Id.*

22   Here, Plaintiffs allege that Defendants violated the RFDCPA in two respects.  First,

23   Plaintiffs allege that Defendants misrepresented the truth, in violation of 15 U.S.C. § 1692e(2)(A),

24   which is incorporated into the RFDCPA, because Defendants "communicated to the Plaintiffs… (i)

25   [t]hat the amount of the debt was $166,045.78 when, in truth, there was no debt owed; (ii) [t]hat the

26   character of the money owed was a debt when, in truth, there was no debt owed; and (iii) [t]hat the

27   legal status of the $166,045.78 was an amount that was owed to Chase when, in truth, Plaintiffs

28   were under absolutely no legal obligation to pay any portion of that sum to Chase or PRS..."

**United States District Court**
For the Northern District of California

Compl. ¶ 23; 15 U.S.C. § 1692e(2)(A) (prohibiting "[t]he false representation of… the character, amount, or legal status of any debt"). Second, Plaintiffs allege that Defendants violated 15 U.S.C. § 1692f(1), which is also incorporated into the RFDCPA, by attempting to collect the deficiency on the Second Note when the debt "was not [legally] authorized." Compl. ¶ 24; 15 U.S.C. § 1692f (prohibiting "[t]he collection of any amount… unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

As to the latter claim under Section 1692f(1), the Court agrees with PRS that this claim fails. Plaintiffs' Section 1692f(1) claim alleges, in essence, that Defendants violated the law simply by trying to collect upon the Second Note when no debt was owed. This claim fails because, while Section 580b applies and therefore "eliminates [Defendants']… ability to seek a deficiency judgment," as set forth above, Section 580b did "not [technically] eliminate the underlying debt." *Herrera I*, 2009 WL 2912517 at *8. Thus, Defendants were not attempting to collect a debt which was not legally authorized in violation of Section 1692f(1). *See Herrera I*, 2009 WL 2912517 at *7-8 (holding that a creditor was not liable merely for attempting to collect upon a debt after a foreclosure because Section 580b did not extinguish the debt).[26]

As to the former claim under Section 1692e(2)(A), the Court is persuaded that this claim should survive. Some of Plaintiffs' misrepresentation allegations in connection with this claim may be construed as alleging that Defendants violated Section 1692e(2)(A) and the RFDCPA simply by attempting to collect upon the debt when "there was no debt owed." *See e.g.* Compl. ¶ 23 (alleging that Defendants misrepresented the truth when they "communicated to the Plaintiffs… (i)

---

[26] Plaintiffs argue that Plaintiffs' Section 1692f(1) claim is valid because "[e]ven if the debt is technically 'not extinguished,' CCP §580b makes clear that the collection of the deficiency is not 'authorized by the agreement creating the debt (the note) or by law.'" *See* PRS Opposition at 8 (quoting 15 U.S.C. § 1692f and citing *Bank of Sonoma Co. v. Dorries*, 185 Cal. App. 3d 1291, 1294 (1986) ("The purpose of section 580b is that for a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt.")). As set forth above, the Court disagrees and finds that because Section 580b did not extinguish the outstanding debt on the Second Note, Defendants were not, as a technical matter, attempting to collect a debt which was not owed (although, as a practical matter, Defendants would have no legal recourse if Plaintiffs chose not to pay). *See Herrera I*, 2009 WL 2912517 at *8 (holding that Section 580b does not extinguish the debt but rather "closes the courthouse door on any creditor's collection efforts against the mortgagor"). Thus, this Court agrees with the *Herrera* Court that Defendants did not violate Section 1692f(1) merely by attempting to collect on the debt. *See id.* at *7-8.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

[t]hat the amount of the debt was $166,045.78 when, in truth, there was no debt owed; [and] (ii) [t]hat the character of the money owed was a debt when, in truth, there was no debt owed). Nevertheless, at least one of Plaintiffs' allegations in support of their misrepresentation claim appears to state a valid cause of action.

Specifically, Plaintiffs allege that Defendants' communications misrepresented the truth by stating "[t]hat the legal status of the $166,045.78 was an amount that was owed to Chase when, in truth, Plaintiffs were under absolutely no legal obligation to pay any portion of that sum to Chase or PRS..." Compl. ¶ 23(iii). The Court construes this allegation as an allegation that Defendants' communications failed to advise Plaintiffs that, as a result of Section 580b, Defendant could not pursue a legal action to hold Plaintiffs personally liable for the deficiency on the Second Note. As set forth in *Herrera*, the least sophisticated investor might be misled by a debtor's communication claiming that a debt was owed if that communication fails to advise the debtor "as to the significance of section 580b." *Herrera II,* 2009 WL 5062192 at *7. Accordingly, the Courts finds that Plaintiffs have stated a claim for misrepresentation in violation of Section 1692e(2)(A), as incorporated into the RFDCPA.

Thus, for the reasons set forth above, the Court denies PRS's Motion to Dismiss Plaintiffs' RFDCPA claim predicated on Section 1692e(2)(A) and grants PRS's Motion to Dismiss Plaintiffs' RFDCPA claim predicated on Section 1692f(1). The Court additionally finds that granting Plaintiffs leave to amend their Section 1692f(1) claim would be futile because Plaintiffs cannot show that Section 580b extinguished Plaintiffs' debt and therefore cannot show that Defendants were seeking to collect a debt, which Plaintiffs claim was not "permitted by law." 15 U.S.C. § 1692f(1). Accordingly, the Court denies Plaintiffs' leave to amend their Section 1692f(1) claim. *See Carvalho,* 629 F.3d at 892–93 (holding that a court "may... deny leave to amend due to... futility of amendment.").

### 5. Rule 8

PRS also contends that Plaintiffs' complaint fails to satisfy Federal Rule of Civil Procedure 8. PRS Mot. at 8. Rule 8 requires that a Plaintiff allege "sufficient factual matter... to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678. PRS argues that Plaintiffs have

30

1   failed to satisfy Rule 8 because Plaintiffs have not alleged facts showing that: (1) the debt at issue

2   is covered by the RFDCPA; and (2) Section 580b was applicable and precluded collection of the

3   deficiency.  PRS Mot. at 8.  PRS's arguments fail.

4         As set forth above, the Court has concluded that Plaintiffs have alleged facts sufficient to

5   show that the debt at issue is covered by the RFDCPA.  The Court has also concluded that Section

6   580b applies.  To the extent Chase argues that Plaintiffs' allegations fail under Rule 8 because PRS

7   was not precluded from collecting on the deficiency, as set forth above, the Court agrees that

8   Plaintiffs' RFDCPA claim fails to the extent it is based on a violation of 15 U.S.C. § 1692f(1).

9   Specifically, Plaintiffs' allegations fail to establish a violation of Section 1692f(1) because

10  Plaintiffs' allegations in support of this claim assert, in essence, that Defendants are liable merely

11  for trying to collect the deficiency on the Second Note.  Nevertheless, the Court has concluded that

12  Plaintiffs' RFDCPA claim states a valid cause of action to the extent it is predicated on a violation

13  of 15 U.S.C. § 1692e(2)(A) because Defendants allegedly misrepresented the truth by failing to

14  advise Plaintiffs "as to the significance of section 580b."  *Herrera II,* 2009 WL 5062192 at *7.

15        Accordingly, dismissal of Plaintiffs' RFDCPA claim predicated on Section 1692e(2)(A) for

16  failure to comply with Rule 8 is not warranted.  However, for the reasons set forth above, the Court

17  dismisses Plaintiffs' RFDCPA claim predicated on Section 1692f(1).

18              **6.    Injunctive Relief**

19        Finally, the Court addresses Chase's argument that the Court should "dismiss Plaintiffs'

20  injunctive relief requests…."  *See* Chase Mot. at 11.  Plaintiffs seek "a temporary restraining order,

21  preliminary injunction, and permanent injunction, enjoining Defendants… from collecting or

22  attempting to collect any California mortgage or deed of trust or note secured thereby following

23  Chase's release of its security interest in such note where such mortgage or deed of trust was 'on a

24  dwelling for not more than four families given to a lender to secure repayment of a loan which was

25  in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by

26  the purchaser.'"  Compl. ¶ 27.

27        Chase argues that Plaintiffs are not entitled to injunctive relief for two reasons.  First, Chase

28  argues that Plaintiffs' claim is not "viable" and therefore Plaintiffs cannot demonstrate a

**United States District Court**
For the Northern District of California

31

1    "likelihood of success on the merits."  Chase Mot. at 10.  Second, Chase argues that any injunctive

2    relief would "affect" the April 13, 2011 Consent Order Chase entered into with the OCC.  *Id.*

3    (quoting 12 U.S.C. § 1818(i)); RJN, Ex. 4 ("Consent Order").  As noted by Chase, 12 U.S.C. §

4    1818(i) prohibits the Court from granting injunctive relief that would "affect" the Consent Order.

5    12 U.S.C. § 1818(i)(1) ("[N]o court shall have jurisdiction to affect by injunction or otherwise the

6    issuance or enforcement of any notice or order under [section 1831o or 1831p-1]... or to review,

7    modify, suspend, terminate, or set aside any such notice or order.").  The Court finds the latter

8    argument persuasive.

9         The Consent Order provides that Chase adopt an "Action Plan" to address certain

10   deficiencies and unsafe or unsound practices in Chase's residential mortgage servicing.  Consent

11   Order Article III(1).  The Consent Order additionally provides that "[t]he Board shall ensure that,

12   upon implementation of the Action Plan, [Chase] achieves and maintains effective mortgage

13   servicing, foreclosure, and loss mitigation activities… the phrase 'loss mitigation'… *shall include,*

14   *but not be limited to... short sales...*"  Consent Order Article III(2) (emphasis added).  The Action

15   Plan adopted by Chase must ensure that, among other things, Chase complies "with all applicable

16   federal and state laws…"  Consent Order Article III(3).  Thus, the Consent Order encompasses

17   within its scope Chase's practices relating to short sales and also requires that Chase develop

18   policies to ensure that its practices are in compliance with federal and state laws.

19        Plaintiffs seek an injunction barring Chase from pursuing a deficiency judgment against

20   borrowers if Chase "releases… its security interest" in the borrower's note.  Compl. ¶ 27.  While

21   Plaintiffs' requested injunctive relief does not expressly pertain to short sales, to the extent

22   Plaintiffs' requested relief limits Chase's remedies after it has released its security interests -- a key

23   step in effecting a short sale -- Plaintiffs' requested injunctive relief appears to be a proxy for an

24   order directly restricting Chase's short sale practices.  Plaintiffs are, in essence, seeking to use an

25   injunction to require Chase to comply with the law and end its practice of seeking deficiency

26   judgments following short sales.  This relief would "affect" the Consent Order to the extent the

27   Consent Order requires Chase and the Board to work together to ensure that Chase implements

28   effective short sale practices which are in compliance with "applicable federal and state laws."

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   Consent Order Article III(2)-(3).  Notably, Plaintiffs do not meaningfully dispute that their

2   requested injunctive relief affects the Consent Order.  *See* Chase Opp. at 9 (stating that "Plaintiffs

3   disagree" with Chase's argument that injunctive relief "would… conflict with a prior Consent

4   Order" and then proceeding to argue that "the point is irrelevant" because the fact that one of

5   Plaintiffs' requested remedies is improper does not warrant dismissal of Plaintiffs' claims).

6   Because Plaintiffs' requested injunctive relief would affect the Consent Order, Plaintiffs'

7   injunctive relief requests are dismissed.  *See* 12 U.S.C. § 1818(i); *In re JPMorgan Chase Mortgage*

8   *Modification Litig.*, 880 F. Supp. 2d 220, 233 n.19 (D. Mass. 2012) (holding that, while Section

9   1818(i) did not prohibit plaintiffs from bringing state law causes of action against Chase for

10  monetary damages, "it would be improper for [the] court… to award any injunctive relief that

11  relates to *prospective* servicing practices that are anticipated by the OCC's [Consent] Order").

12  Moreover, because it does not appear that Plaintiffs can amend their injunctive relief requests to

13  seek relief which would not affect the Consent Order, the Court denies Plaintiffs leave to amend

14  their injunctive relief requests.  *See Carvalho,* 629 F.3d at 892–93 (holding that a court "may…

15  deny leave to amend due to… futility of amendment.").[27]

16  **V.      CONCLUSION**

17  For the reasons set forth above, the Court DENIES Defendants' Motions to Dismiss

18  Plaintiffs' cause of action for a violation of the RFDCPA predicated upon a violation of 15 U.S.C.

19  § 1692e(2)(A).  The Court GRANTS with prejudice Defendants' Motions to Dismiss Plaintiffs'

20  RFDCPA claim predicated on a violation of 15 U.S.C. § 1692f(1) of the FDCPA and Plaintiffs'

21  injunctive relief requests.

22  **IT IS SO ORDERED.**

23  Dated: June 12, 2013                                  *Lucy H. Koh*

24                                                              LUCY H. KOH
                                                                United States District Judge

---

[27] Chase does not appear to be requesting that the Court dismiss Plaintiffs' claims to the extent that they seek damages and the Court does not herein order that Plaintiffs' damages claims be dismissed.

Case No.: 12-CV-03756-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS